# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No.: 2:12-cr-00004-APG-GWF |
| vs. | (Related Case No.: 2:12-cr-00084-APG-GWF) |
| | **ORDER** |
| JORDAN GEORGIEVSKI, | **Motion to Disqualify (#928)** |
| Defendant. | |

This matter is before the Court on the Government's Sealed Motion to Disqualify Defense Counsel (#928), filed on February 25, 2015. Defendant Jordan Georgievski filed his Sealed Response to the Government's Motion (#949) on March 18, 2015. The Court conducted hearings in this matter on March 30, April 27, May 18 and May 19, 2015. During the hearing on May 19, 2015, the Court denied the Government's motion to disqualify Defendant Georgievski's counsel, without prejudice. The following order explains the basis for the Court's decision.

## BACKGROUND

The indictment filed in this case on January 10, 2012 charges Defendant Jordan Georgievski with participation in a racketeer influenced corrupt organization in violation of 18 U.S.C. §§ 1962(c) and 1963 (Count 1) and conspiracy to engage in a racketeer influenced corrupt organization in violation of 18 U.S.C. § 1962(d) (Count 2). The indictment alleges that Defendant Georgievski participated in "the Carder.su organization" which allegedly operates an online marketplace in which members of the organization engage in acts of identity theft and financial fraud, including, but not limited to, acts involving trafficking in stolen means of identification, trafficking in, production and use of counterfeit identification documents and counterfeit access devices, and bank

fraud. *Indictment (#1), pg. 6.* The indictment alleges that Defendant Georgievski was "a Vendor in the Carder.su organization of counterfeit credit cards, as well as counterfeit holograms that can be used to manufacture counterfeit credit cards." *Id., pg. 15.* The indictment alleges that Georgievski sold blank counterfeit plastic cards to members for $45 dollars each, embossed counterfeit credit cards for $75 each, and that Georgievski's prices for holograms varied by the quantity purchased. The indictment further alleges that Georgievski's criminal activities included, but were not limited to possession of fifteen or more counterfeit and unauthorized access devices, and conspiracy to possess and possession of device making equipment. *Id., pgs. 15-16.*

Defendant Georgievski, a citizen of Macedonia, was extradited to the United States and made his initial court appearance and was arraigned on the indictment on January 12, 2015. Defendant Georgievski retained attorney Richard Wright, Esq. of the law firm of Wright, Standish and Winkler to represent him in this case. The Government notified the Court and Defendant at the time of the arraignment that Mr. Wright has a potential conflict of interest due to the fact that Mr. Wright's law partner or associate attorney, Karen Winkler, represents Thomas Lamb, a defendant in a related case whom the Government may call as a witness at Defendant Georgievski's trial. The Government reserved its right to move to disqualify Mr. Wright as Defendant's counsel based on the alleged conflict of interest. *See Minutes of Proceedings (#883).*

Defendant Thomas Lamb was charged in Case No. 2:12-cr-00084-APG-GWF with conspiracy in violation of 18 U.S.C. § 371 (Count 1); trafficking in and production of false identification documents in violation of 18 U.S.C. §§ 1028(a)(1), (b)(1)(A)(ii), and (c)(3) and 18 U.S.C. § 2 (Counts 2-7); and trafficking in, production of and use of counterfeit access devices in violation of 18 U.S.C. §1029(a)(1) and 18 U.S.C. § 2 (Count 8). *Indictment (#1).* This indictment also alleged that Defendant Lamb was a member of "the Carder.su organization" through which he and the co-defendants in that case engaged in the charged offenses. *Id.* Defendant Lamb was arraigned on the indictment on March 26, 2012 and attorney Karen Winkler, Esq. was appointed by the Court to represent him. *Minutes of Proceedings (#21)* and *Order Appointing Counsel (#23).* Ms. Winkler has continued to represent Mr. Lamb since the time of his arraignment.

On or about October 31, 2013, Defendant Lamb entered into a written plea agreement with

2

the Government pursuant to which he agreed to plead guilty to an information charging him with conspiracy in violation of 18 U.S.C. § 371. *See Information (#157); Plea Agreement (#158).* Defendant Lamb plead guilty to the information on October 31, 2013. His sentencing is presently set for September 24, 2015. The Government represented at the March 30, 2015 hearing on the instant motion that Mr. Lamb is cooperating with the Government pursuant to a cooperation agreement that obligates him to testify as a witness for the Government. Mr. Lamb has been debriefed by the Government on multiple occasions and has been listed on the Government's witness lists in Case No. 2:12-cr-00004-APG-GWF. In regard to the nature of Mr. Lamb's possible testimony in this case, the Government states that the most common defense raised in these cases is that the Carder.su organization is not an "enterprise" under the law. Mr. Lamb was a member of the enterprise, was an active participant in the enterprise, and purchased counterfeit credit cards from multiple vendors. The Government therefore states that it may call Mr. Lamb to testify about how the Carder.su organization functioned, how he obtained information from dump vendors, or counterfeit credit card number vendors, and how he obtained credit cards from vendors similar to Defendant Georgievski. However, based on Mr. Lamb's debriefings with the Government, it does not appear that he actually interacted with Defendant Georgievski.

Attorney Richard Wright stated that at the inception of his representation of Defendant Georgievski, he had never heard of Mr. Lamb, had never met him, and had never discussed Mr. Lamb's case with attorney Karen Winkler. Mr. Wright states that Ms. Winkler has advised him that she does not know Defendant Georgievski and has not had any contact with him. Mr. Wright further represented that Defendant Georgievski does not know Thomas Lamb and has never had contact with him. Based on the information provided by the Government, Mr. Wright does not believe Mr. Lamb will provide testimony regarding any alleged interaction or participation in anyway with Defendant Georgievski. Mr. Wright states that if Defendant Georgievski actually proceeds to trial, there are other measures besides disqualification of counsel that can be taken to protect Defendant Georgievski's right to a conflict free representation. For example, the Government could call a different cooperating witness to testify about the Carder.su. organization. If Mr. Lamb does testify, the Court could order that separate counsel be appointed for Mr.

Georgievski to cross-examine Mr. Lamb.  Mr. Wright also stated that he does not know at this time whether Defendant Georgievski will contest the existence of the "enterprise" as part of his defense. He indicated that Defendant Georgievski's defense will be that he is not the person whom the Government alleges engaged in the conduct attributed to "Jordan Georgievski."

This Court found that the Government has raised a sufficiently serious issue regarding a potential conflict of interest such that the Court should first determine whether Mr. Georgievski and Mr. Lamb are willing to waive the potential conflict of interest before deciding whether Mr. Wright should be disqualified.  Following discussion with the parties, the Court appointed separate independent counsel for Mr. Georgievski and Mr. Lamb to advise them regarding the potential conflict of interest arising from their respective representation by Mr. Wright and Ms. Winkler, the adverse consequences that could arise from the potential conflict, and to advise them with respect to any waiver of the conflict of interest, including the scope and effect of any conflict waiver.

On May 18, 2015, the Court conducted a hearing regarding a waiver of the potential conflict of interest by Defendant Thomas Lamb.  The Court was advised that Mr. Lamb desired to waive the alleged conflict of interest.  After canvassing Mr. Lamb and his independent counsel, Kathleen Bliss, Esq., on the record, the Court determined that Mr. Lamb had made a knowing, intelligent and voluntary waiver of his right to conflict free representation, including that Mr. Lamb understands that he cannot seek a mistrial (if applicable) or raise claims of ineffective assistance of counsel based on any conflict of interest arising from attorney Karen Winkler's representation of him and attorney Richard Wright's representation of Jordan Georgievski.   Defendant Lamb's written Conflict Waiver (#228) was thereupon filed in Case No. 2:12-cr-00084-APG-GWF.

On May 19, 2015, the Court conducted a hearing regarding a waiver of the potential conflict of interest by Defendant Jordan Georgievski.  The Court was advised that Mr. Georgievski desired to waive the alleged conflict of interest.  After canvassing Mr. Georgievski and his independent counsel, Michael Pandulo, Esq., on the record, the Court determined that Mr. Georgievski had made a knowing, intelligent and voluntary waiver of his right to conflict free representation, and that Mr. Georgievski understands that this waiver means that he cannot seek a mistrial or raise claims of ineffective assistance of counsel based on any conflict of interest arising from attorney

Richard Wright's representation of him and attorney Karen Winkler's representation of Thomas Lamb. Defendant Georgievski's written Conflict Waiver (#1011) was there upon filed in Case No. 2:12-cr-00004-APG-GWF.

**DISCUSSION**

"The Sixth Amendment to the United States Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense.'" *Wheat v. United States*, 486 U.S. 153, 158, 108 S.Ct. 1692, 1696 (1988). The Supreme Court observed that "this right was designed to assure fairness in the adversary criminal process." *Id.*, 108 S.Ct. at 1696-97. While the right to select and be represented by counsel of one's choice is comprehended by the Sixth Amendment, "the essential aim of the Amendment is to guarantee an effective advocate for each defendant, rather than ensure that a defendant will inexorably be represented by a lawyer whom he prefers." *Id.*, 486 U.S. at 159, 108 S.Ct. at 1697. The Court has held that the erroneous deprivation of a defendant's counsel of choice is "structural error" which requires reversal without any requirement that the defendant show that substitute counsel was ineffective. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144-153, 126 S.Ct. 2557, 2561-66 (2006).

The right to choose one's counsel is circumscribed in several important respects, including by the concern with an actual or potential conflict of interest of an attorney who seeks to represent more than one defendant in a criminal prosecution. *Wheat* states that representation of two or more criminal defendants in the same case is not a *per se* violation of the constitutional guarantee of effective assistance of counsel. The trial court must, however, take adequate steps to ascertain whether the potential conflict warrants separate counsel. *See also* Rule 44(c) of the Federal Rules of Criminal Procedure. *Wheat* noted that waiver of the conflict of interest by all affected defendants does not automatically cure any problems resulting from multiple representation. Federal courts have an independent interest in ensuring that trials are conducted within ethical standards and that just verdicts are rendered. Trial courts also have a legitimate interest that their judgments remain intact on appeal. The Supreme Court noted that federal appellate courts have entertained ineffective assistance of counsel claims by defendants who have specifically waived the

5

right to conflict-free counsel.  The Court also stated that waivers of the conflict may not be valid if the attorney has not conveyed to the clients all necessary information to make their waivers knowing and intelligent.  *Wheat*, 486 U.S. at 161-63, 108 S.Ct. at 1698-99.  The Court therefore stated that "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict of interest may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."  *Id.*, 486 U.S. at 163, 108 S.Ct. at 1699.

      The potential conflict in *Wheat* arose on the eave of trial when the attorney, who already represented two defendants in the case, moved to substitute in as counsel for a third.  The Supreme Court stated that under these circumstances the district court was required to rely on instinct and judgment based on experience in making its decision; and did not exceed its broad latitude in refusing to allow the substitution.  The Court noted that the petitioner "rightly points out that the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side."  The Court stated, however, that "trial courts are undoubtedly aware of this possibility, and must take it into consideration along with all of the other factors which inform this sort of decision."  *Id.*, 486 U.S. at 163, 108 S.Ct. at 1699.  The Court further stated that the presumption in favor of defendant's choice of counsel may be overcome not only by a demonstration of actual conflict, but also by a showing of a serious potential for conflict. *Id.*, 486 U.S. at 164, 108 S.Ct. at 1700.  In upholding the district court's decision, the Court stated that the court could have reasonably anticipated that defense counsel would be placed in the untenable position of not being able to adequately cross-examine the codefendants if they testified against the third defendant that he sought to represent.

      In *United States v. Baker*, 10 F.3d 1374, 1398-99 (9th Cir. 1993), the court rejected the defendant's argument that the disqualification of his attorney violated his Sixth Amendment rights.  The district court disqualified the attorney based on his prior representation of defendant's former girlfriend who was a "key government witness" against the defendant.  The attorney stated that he could not recall any confidential personal information that he learned during the prior representation that he might use to cross-examine the former girlfriend, and that he was willing to

6

limit his cross-examination of her to publicly available information. The Ninth Circuit stated, however, that it was reasonable to presume that effective cross-examination of the former girlfriend would include questioning her ability to accurately recall, observe and testify about defendant's activities and that her drug use would be a significant factor in this impeachment. The fact that the witness's drug use was a matter of public record did not eliminate the possibility of an unwitting disclosure of confidential communications. The attorney "could thus have been faced with either exploiting his prior, privileged relationship with the witness or failing to defend his present client zealously for fear of misusing confidential information." 10 F.3d at 1399. The court also rejected defendant's argument that no potential conflict existed because the charges against him were not substantially related to the attorney's prior representation of the witness. The court stated that "[s]ubstantial relationship to prior representation, however, turns not only on factual identity, but may be presumed where there is 'a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation.'" *Id.* at 1399, quoting *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980).

In *United States v. Turner*, 594 F.3d 946 (7th Cir. 2010), the attorney was initially hired to represent, at sentencing, a defendant named Womack who had been found guilty of participating in a drug trafficking conspiracy. While Womack was awaiting sentencing, Turner, another defendant in the alleged conspiracy, was taken into custody. Turner retained the same attorney to defend him. The government moved to disqualify the attorney from representing Turner on the grounds that Womack might decide to cooperate with the government and testify against Turner. Turner's attorney represented, however, that neither Womack nor Turner wanted to cooperate with the government and that both defendants had waived any conflict of interest. The district court disqualified the attorney and Turner was subsequently convicted at trial. In reversing Turner's conviction and ordering a new trial, the Seventh Circuit stated that if a court "finds an actual conflict of interest that seriously undermines counsel's effectiveness, 'there can be no doubt that [the court] may decline a proffer of waiver, and insist that the defendants be separately represented.'" 594 F.3d at 952, quoting *Wheat*, 486 U.S. at 162, 108 S.Ct. 1692. The court further stated:

> The disqualification decision becomes more difficult, however, if the joint representation presents only a *potential* for conflict. Because "a possible conflict inheres in almost every instance of multiple representation," *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court has said that only a *serious* potential conflict will justify overriding the defendant's choice of counsel, *Wheat,* 486 U.S. at 164, 108 S.Ct. 1692. This requires an inquiry into the likelihood that the potential conflict will mature into an actual conflict and the degree to which it threatens the right to effective assistance of counsel. Accordingly, before disqualifying counsel based on a *potential* conflict, the district court should evaluate (1) the likelihood that the conflict will actually occur; (2) the severity of the threat to counsel's effectiveness; and (3) whether there are alternative measures available other than disqualification that would protect the defendant's right to effective counsel while respecting his choice of counsel. The first inquiry is the most important; a conflict that would seriously undermine counsel's effectiveness is not a basis for disqualification if it has little likelihood of occurring.

*Turner*, 594 F.3d at 952.

The Seventh Circuit discussed cases at either end of the disqualification spectrum. The court noted that in *United States v. Algee*, 309 F.3d 1011, 1014 (7th Cir. 2002) it affirmed disqualification of an attorney who had previously represented two other coconspirators whom the government intended to call as principal witnesses against the defendant. At the other end of the spectrum, the court cited *Rodriguez v. Chandler*, 382 F.3d 670 (7th Cir. 2004) in which it held that a trial court erred in disqualifying defendant's counsel because he had previously represented a detective who had participated in the investigation, was an "integral part of the case" and a potential witness against the defendant. The prior representation had involved an unrelated real-estate transaction. The court noted that the defendant was represented by two attorneys, one of whom had no conflict of interest and could have cross-examined the detective if he testified at defendant's trial. The court also stated that there are other protective measures that can be imposed short of disqualification of counsel, such as limiting the examination of the witness or, on rare occasions, excluding evidence. *Turner*, 594 F.3d at 953. The court in *Turner* found that the possibility that either Womack or Turner might change their minds and decide to testify against the other was too remote to justify the disqualification of Turner's counsel. *Id.*, at 954-55.

In *United States v. Volpendesto*, 746 F.3d 27, 283 (7th Cir. 2014), the Seventh Circuit distinguished *Turner* in affirming the disqualification of defendant's counsel who had previously

represented another defendant in the same conspiracy. That codefendant had agreed to cooperate with the government and testify against the defendant at trial. The court held that this actual conflict could not be avoided or cured by having separate defense counsel cross-examine the witness. This case can also be distinguished from *Turner* on the ground that Mr. Lamb has entered into a cooperation agreement which obligates him to testify as a witness for the Government. Although there is apparently some uncertainty that Mr. Lamb will actually be called to testify at Defendant Georgievski's trial, there is a greater possibility of that occurring than was the case in *Turner*. Other factors, however, militate in favor of respecting Defendant Georgievski's choice of counsel over the Government's motion for disqualification.

Unlike the co-defendants in *Wheat*, *Turner* and *Volpendesto*, or the prosecution witness in *Baker*, there is no indication that Mr. Lamb has personal knowledge of Defendant Georgievski's alleged participation in the crimes charged in the indictment. Instead, the Government may call Mr. Lamb to testify more generally about the existence of the Carder.su organization or conspiracy, and how it functioned. Although an attorney's conflict of interest is imputed to other attorneys in the same law firm, *see* Rule 1.7 of the Nevada Rules of Professional Conduct, Mr. Wright has not had any direct attorney-client relationship with Mr. Lamb through which he has acquired confidential information that might be exploited if Mr. Lamb testifies at trial. The Court accepts the representations of Mr. Wright and Ms. Winkler that they have not shared confidences regarding their respective clients.[1] This case does not involve the same degree of conflicted representation that exists where the attorney has actually represented the co-defendant or witness and acquired confidential information that could be used on behalf of the client he currently represents. To the extent additional protection is required, the Court can follow the suggestion in *Turner* that separate counsel be appointed to cross-examine Mr. Lamb.

It is also not clear that Defendant Georgievski's counsel will challenge or need to challenge Mr. Lamb's testimony if he testifies at trial. Mr. Wright has indicated that Defendant

---

[1] Such representations or assurances would not be sufficient to overcome the conflict if Mr. Lamb was expected to testify based on personal knowledge of Mr. Georgievski's alleged criminal activity.

Georgievski's defense will be that he did not engage in the acts charged against him in the indictment. He indicates that Defendant may elect not to challenge the allegation that Carder.su is a criminal enterprise. If Defendant Georgievski's counsel determines that it is necessary to challenge and cross-examine Mr. Lamb, however, as stated, separate defense counsel can be appointed for that purpose.

The Government has a legitimate interest in avoiding an actual conflict of interest that could taint a conviction of Defendant Georgievski. Based on the Government's representations at the March 30, 2015 hearing, there may be other individuals who can testify for the Government on the same matters that Mr. Lamb would testify. While the disqualification of Mr. Wright is one way to avoid a tainted conviction, the Government may also be able to avoid the taint by calling witnesses other than Mr. Lamb. The potential conflict of interest may also be avoided if Mr. Georgievski resolves this case through a plea agreement with the Government. The Government has not made the case that the potential conflict can only be reasonably avoided by Mr. Wright's disqualification.

In *Ryan v. Eighth Judicial District Court*, 123 Nev. 419, 168 P.3d 703 (Nev. 2007), the Nevada Supreme Court stated that the presumption in favor of a non-indigent defendant's right to counsel of his own choosing should rarely yield to the imposition of involuntary conflict free representation. In that case, co-defendants in a criminal prosecution sought to be represented by the same attorney and waived their rights to conflict free representation. The court concluded that the defendants were entitled to do so if adequate steps were taken to ensure that their waivers were knowingly, intelligently and voluntarily made. Those steps included appointing independent counsel to advise the defendants about the potential conflicts and problems arising from joint representation and the scope and effect of any waiver of their right to conflict free representation. The Nevada Supreme Court also required the trial court to canvass the defendants to ensure that their waivers were legally valid, and required that the waivers be in writing. 123 Nev. at 429-431, 168 P.3d at 710-711. As stated above, both Mr. Georgievski and Mr. Lamb have executed written conflict waivers after consulting with independent counsel and have been appropriately canvassed by the Court with respect to their waivers.

. . .

## CONCLUSION

Based on the foregoing, the Court finds that the potential conflict of interest arising from attorney Richard Wright's representation of Defendant Jordan Georgievski and attorney Karen Winkler's representation of Defendant Thomas Lamb does not require the disqualification of Mr. Wright as Defendant Georgievski's counsel. Because further developments might give rise to an actual conflict of interest requiring disqualification, the Court denies the Government's motion without prejudice. Accordingly,

**IT IS HEREBY ORDERED** that Government's Sealed Motion to Disqualify Defense Counsel (#928) is **denied** without prejudice.

DATED this 22nd day of May, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge